# UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS

## UNITED STATES

**v.**

## Airman Basic CASEY M. CROWDER
### United States Air Force

## ACM S32315

## 5 May 2016

Sentence adjudged 30 March 2015 by SPCM convened at Robins Air Force Base, Georgia. Military Judge: Lynn Watkins (sitting alone).

Approved Sentence: Bad-conduct discharge, confinement for 52 days, and forfeiture of $1031.00 pay per month for 3 months.

Appellate Counsel for Appellant: Captain Annie W. Morgan.

Appellate Counsel for the United States: Lieutenant Colonel Roberto Ramirez and Gerald R. Bruce, Esquire.

Before

ALLRED, TELLER, and ZIMMERMAN
Appellate Military Judges

OPINION OF THE COURT

This opinion is issued as an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.

TELLER, Senior Judge:

Appellant was convicted, in accordance with his pleas, by a military judge sitting alone of desertion, absence without leave, and wrongful use of a controlled substance in violation of Articles 85, 86 and 112a, UCMJ, 10 U.S.C. §§ 885, 886, 912a. The court sentenced him to a bad-conduct discharge, 3 months of confinement, and forfeiture of $1,031.00 pay per month for 3 months. The convening authority reduced the confinement to 52 days, but otherwise approved the adjudged sentence.

Appellant argues that his guilty plea to using oxymorphone was improvident and that the staff judge advocate's recommendation failed to properly advise the convening authority resulting in the convening authority's failure to honor the pretrial agreement. Finding no error that materially prejudices a substantial right of Appellant, we affirm the findings and sentence.

*Background*

Appellant was a first-term Airman who never completely adapted to the Air Force. After reporting to his first assignment, he often returned to his nearby hometown to be with his friends and family. While back in his hometown, he misused Vicodin with a friend on two occasions by crushing a pill and snorting the resulting powder. He contends he used Vicodin to relieve his feelings of stress. His Vicodin abuse was detected during a "dorm sweep" urinalysis inspection shortly after the first of the two incidents. His second use was detected in a follow-up inspection when the initial positive result came back. In between his two instances of drug use, Appellant also absented himself from work for a day without authority. When Appellant became aware he was about to be apprehended, he fled the installation, intending to never return. He was apprehended by civilian authorities near his hometown approximately 19 days later. Although he was confined in the same civilian facility from his apprehension up until trial, the first day was under civilian authority while the remainder was at the request of military authorities.

As part of Appellant's pretrial agreement, the convening authority agreed to credit all of Appellant's pretrial confinement against any adjudged sentence, but the record shows some confusion as to how that credit would be applied. As noted above, the adjudged sentence included 90 days confinement. The parties agreed at trial that Appellant was entitled to a total of 38 days credit for pretrial confinement. When the military judge inquired whether the quantum portion of the pretrial agreement contained anything other than a limitation on sentence, Appellant's trial defense counsel answered "[n]othing that can't be enforced by the convening authority, Your Honor." She then clarified that the conditions consisted of the pretrial confinement credit provision as well as an agreement to refer the case to a special court-martial. Later, after the announcement of sentence, in reviewing how the pretrial agreement would affect the adjudged sentence, the military judge stated that the convening authority could approve the adjudged sentence without modification, and both the Government and trial defense counsel agreed. Despite the agreement that Appellant was entitled to credit, the confinement order did not reflect any credit for pretrial confinement against the adjudged sentence. In his post-trial advice, the staff judge advocate advised the convening authority, "In accordance with the pretrial agreement, I recommend you approve only so much of the sentence as calls for a bad conduct discharge, confinement for 52 days and forfeitures of $1,031.00 pay per month for 3 months" without explicitly stating that the modification of the adjudged confinement was intended to provide the agreed-upon credit for pretrial confinement. The staff judge advocate's recommendation was served on Appellant and Appellant's trial defense counsel

on 30 April 2015. Appellant submitted a timely clemency request, asserting no legal error and requesting only that the convening authority disapprove the bad-conduct discharge. The convening authority approved a sentence of a bad-conduct discharge, confinement for 52 days, and forfeitures of $1,031.00 pay per month for 3 months. The action omitted any mention of administrative credit for pretrial confinement and did not explicitly state that the reduction of the adjudged confinement was intended to provide the agreed-upon credit for pretrial confinement.

*Providence of Plea to Use of Oxymorphone*

Appellant now contends his guilty pleas to the specifications of drug use are improvident because the Vicodin pills he ingested did not contain oxymorphone, the sole controlled substance alleged in Charge III, Specification 1 and one of two controlled substances alleged in Charge III, Specification 2.

We review a military judge's decision to accept a guilty plea for an abuse of discretion and review questions of law arising from the guilty plea de novo. *United States v. Inabinette*, 66 M.J. 320, 322 (C.A.A.F. 2008). "In doing so, we apply the substantial basis test, looking at whether there is something in the record of trial, with regard to the factual basis or the law, that would raise a substantial question regarding the appellant's guilty plea." *Id.* Appellant maintains the burden to demonstrate a substantial basis for questioning the plea. *United States v. Negron*, 60 M.J. 136, 141 (C.A.A.F. 2004).

The military judge may consider both the stipulation of fact and the inquiry with the appellant when determining if the guilty plea is provident. *United States v. Hines*, 73 M.J. 119, 124 (C.A.A.F. 2014). "In reviewing the providence of [the a]ppellant's guilty pleas, we consider his colloquy with the military judge, as well any inferences that may reasonably be drawn from it." *United States v. Carr*, 65 M.J. 39, 41 (C.A.A.F. 2007) (citing *United States v. Hardeman*, 59 M.J. 389, 391 (C.A.A.F. 2004)). A military judge abuses her discretion when accepting a plea if she does not ensure the accused provides an adequate factual basis to support the plea during the providence inquiry. *See United States v. Care*, 40 C.M.R. 247, 250–51 (C.M.A. 1969). This is an area in which the military judge is entitled to significant deference, given the often undeveloped factual record in such cases as compared to that of a litigated trial. *Inabinette*, 66 M.J. at 322.

Article 112a, UCMJ, is entitled "Wrongful use, possession, etc., of controlled substances" and states, in pertinent part, "Any person . . . who wrongfully uses . . . a substance described in subsection (b) shall be punished as a court-martial may direct." Subsection (b) lists three categories of covered substances: (1) those listed in the text of the article; (2) those found on a schedule as prescribed by the President; and, as applicable here, (3) those found on Schedules I through V of the Controlled Substances Act. *See United States v. Paul*, 73 M.J. 274, 277 (C.A.A.F. 2014).

The Manual for Courts-Martial delineates two elements for this offense: (1) use of a controlled substance, (2) that is wrongful. *Manual for Courts-Martial, United States (MCM),* pt. IV, ¶ 37.b.(2) (2012 ed.). The President has defined "use" as "inject[ing], ingest[ing], inhal[ing], or otherwise introduc[ing] into the human body, any controlled substance." *MCM,* pt. IV, ¶ 37.c.(10). To be convicted of wrongful use of a controlled substance, the accused must know of the presence of the controlled substance and know of its contraband nature. *MCM*, pt. IV, ¶¶ 37.c.(5), (10); *United States v. Mance*, 26 M.J. 244, 253–54 (C.M.A. 1988).

Here, Appellant admitted that he knowingly ingested Vicodin and did so knowing of its contraband nature. This admission would undoubtedly be sufficient to sustain a guilty plea to using oxycodone, an ingredient in Vicodin. However, the question before us is whether his admission is sufficient to sustain his plea to using a different controlled substance, oxymorphone, which is not present in Vicodin itself, but is a direct metabolic result of ingesting oxycodone. We find that it is. *See United States v. Honeycutt*, ACM S32214 (A.F. Ct. Crim. App. 26 August 2015) (unpub. op.).

The accused need not "have been aware of the precise identity of the controlled substance [to be guilty of wrongful use], so long as he is aware that it is a controlled substance." *Mance*, 26 M.J. at 254. He need not know "the exact pharmacological identity of the substance" he used so long as he knew his use of the substance he ingested was prohibited by law. *United States v. Stringfellow*, 32 M.J. 335, 336 (C.M.A. 1991). In light of that, if an accused believes he used controlled substance X when, in fact, he used controlled substance Y, he can be convicted of wrongfully using controlled substance Y as he had adequate knowledge to establish wrongfulness. *Id.*; *Mance*, 26 M.J. at 254.

Under that authority, a guilty plea would undoubtedly be provident for wrongful use of oxymorphone if Appellant snorted or orally consumed oxymorphone itself when he erroneously thought he was using a different controlled substance. Although the presence of oxymorphone in Appellant's body was related to a metabolic process rather than a mistake as to the ingredients of Vicodin, we conclude similar reasoning applies to sustain Appellant's guilty plea to wrongfully using oxymorphone even though he only actually knew he was using the contraband substance Vicodin.

The concepts found within *Mance* and *Stringfellow* were explained to Appellant during the providence inquiry. He made sufficient admissions to satisfy the elements of wrongful use of a controlled substance—he knowingly ingested a substance listed in Schedule II of the Controlled Substances Act, and his use of that substance was wrongful. His colloquy with the military judge demonstrated that he understood factually and legally why his conduct was unlawful. He also clearly understood how the urinalysis results related to his use of Vicodin and he did not contend at trial, nor does he now, that he was not guilty of using controlled substances. He also admitted that oxymorphone is itself a controlled substance, in addition to being a metabolite of oxycodone, and agreed he was

guilty of knowingly using Vicodin and knowing its contraband nature. Under these circumstances, we find Appellant's guilty plea to using oxymorphone provident.

*Application of Credit for Pretrial Confinement*

Appellant also asserts that the staff judge advocate's recommendation (SJAR) failed to properly advise the convening authority with regard to pretrial confinement credit. He suggests that this court should use its plenary authority under Article 66, UCMJ, 10 U.S.C. § 866, to independently credit Appellant for the 38 days of pretrial confinement by approving only 14 days confinement, citing *United States v. Wheelus*, 49 M.J. 283 (C.A.A.F. 1998).

Proper completion of post-trial processing is a question of law, which we review de novo. *United States v. Kho*, 54 M.J. 63, 65 (C.A.A.F. 2000). Failure to timely comment on matters in the SJAR, to include matters attached to it, waives the issue unless there is plain error. Rule for Courts-Martial (R.C.M.) 1106(f)(6); *United States v. Scalo,* 60 M.J. 435, 436 (C.A.A.F. 2005). Under a plain error analysis, the appellant bears the burden of showing: (1) there was an error, (2) it was plain or obvious, and (3) the error materially prejudiced a substantial right of the appellant. *Kho,* 54 M.J. at 65. Although the threshold for establishing prejudice in this context is low, the appellant must nonetheless make at least some "colorable showing of possible prejudice." *Scalo*, 60 M.J. at 437.

When reviewing post-trial errors, we recognize the convening authority is an appellant's "best hope for sentence relief." *United States v. Lee*, 50 M.J. 296, 297 (C.A.A.F. 1999) (quoting *United States v. Bono*, 26 M.J. 240, 243 n.3 (C.M.A. 1988)). "Because of the highly discretionary nature of the convening authority's action on the sentence, we will grant relief if an appellant presents 'some colorable showing of possible prejudice.'" *Kho*, 54 M.J. at 65 (quoting *United States v. Wheelus*, 49 M.J. 283, 289 (C.A.A.F. 1998)); *see also Scalo*, 60 M.J. at 435.

Appellant argues that two errors prejudiced him. First, he asserts that the confinement order failed to properly reflect Appellant's credit for pretrial confinement as required under Air Force regulations. Second, he asserts that the SJAR did not include a statement of the nature and duration of pretrial confinement as required by R.C.M. 1106(d)(3)(D) (2008).

We find no basis for relief in either of the specific errors asserted by Appellant. Assuming the confinement order did not comply with Air Force Regulations, we decline to grant relief because there is no evidence Appellant exhausted his administrative remedies. *See United States v. Wilson*, 503 U.S. 329, 335 (1992) (stating that prisoners are entitled to judicial review of administrative application of pretrial confinement credit after exhaustion of administrative remedies). We also find that the provision of R.C.M. 1106 cited by Appellant was superseded by the version of R.C.M. 1106 applicable at the time of

Appellant's trial.[1]  *See* R.C.M. 1106(d)(3) (2012).  The applicable rule required the staff judge advocate to

> provide the convening authority with a copy of the report of results of the trial, setting forth the findings, sentence, and confinement credit to be applied; a copy or summary of the pretrial agreement, if any; any recommendation for clemency by the sentencing authority, made in conjunction with the announced sentence; and the staff judge advocate's concise recommendation.

*Id.*  The SJAR in this case met these requirements.

More broadly, however, it is clear that the application of pretrial confinement credit in this case did not comply with our superior court's guidance and regulatory requirements on the matter.  In *United States v. Spaustat*, the Court of Appeals for the Armed Forces specifically addressed the potential confusion surrounding application of pretrial confinement and other credits in cases in which there is a pretrial agreement.

> [I]n order to avoid further confusion and to ensure meaningful relief in all future cases after the date of this decision, this Court will require the convening authority to direct application of all confinement credits for violations of Article 13 or RCM 305 and all *Allen* credit against the approved sentence, i.e., the lesser of the adjudged sentence or the sentence that may be approved under the pretrial agreement, as further reduced by any clemency granted by the convening authority, unless the pretrial agreement provides otherwise.

57 M.J. 256, 263–64 (C.A.A.F. 2002).  In compliance with this holding, Air Force Instruction (AFI) 51-201, *Administration of Military Justice* (6 June 2013), mandates that pretrial confinement credit "must be ordered in the convening authority's initial action" and provides specific sample language for a convening authority to do so.  AFI 51-201, ¶ 9.4.1, Figure 9.11.  We find that the convening authority's failure to comply with *Spaustat* and AFI 51-201 was error and that the error was plain and obvious.

Despite the error in the convening authority's action, we find Appellant was not prejudiced.  In light of the entire record, we are convinced beyond a reasonable doubt that Appellant received the benefit of his bargain, and that disapproving an additional 38 days of confinement would be an inappropriate windfall.  We note that Appellant did not request any reduction in confinement in his clemency request that would suggest an alternative

---

[1] The cited language appeared in the 2008 edition of the *Manual*, but was revised in 2008 by Executive Order 13,468.  *See* Exec. Order No. 13,468, 73 Fed. Reg. 43,831 (July 28, 2008).

basis for the convening authority's reduction of the adjudged confinement by exactly 38 days. Nor did Appellant object to the omission of language directing credit for pretrial confinement in the convening authority's action. The record does not show, nor does Appellant assert, that he sought administrative relief when he reached the minimum release date he now suggests he was entitled to. We are convinced that his failure to pursue, at any of those opportunities, the additional credit he now seeks reflects the understanding of all the parties to the trial that the convening authority intended to honor the pretrial agreement by approving 38 days fewer than the adjudged sentence rather than directing 38 days of administrative credit. Although that approach was not in compliance with *Spaustat* and AFI 51-201, it achieved substantially the same result.[2] The error in this case did not materially prejudice a substantial right of Appellant, and no further reduction in the approved sentence is warranted.

*Conclusion*

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the approved findings and sentence are **AFFIRMED**.

FOR THE COURT

LEAH M. CALAHAN
Clerk of the Court

---

[2] There is no evidence in this case that Appellant was deprived of any additional administrative credit or access to other advantageous programs that would have been available had the convening authority complied with Air Force Instruction 51-201, *Administration of Military Justice* (6 June 2013). Accordingly, we express no opinion on whether such deprivation would materially prejudice a substantial right.