# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

———————————

**No. ACM 39739**

———————————

**UNITED STATES**
*Appellee*

**v.**

**Alexander R. BAIRD**
Captain (O-3), U.S. Air Force, *Appellant*

———————————

Appeal from the United States Air Force Trial Judiciary

Decided 28 December 2020

———————————

*Military Judge:* Thomas J. Alford.

*Sentence:* Sentence adjudged 1 May 2019 by GCM convened at Tinker Air Force Base, Oklahoma. Sentence entered by military judge on 25 June 2019: Dismissal, confinement for 136 days, and a reprimand.

*For Appellant:* Captain Amanda E. Dermady, USAF.

*For Appellee:* Captain Kelsey B. Shust, USAF; Mary Ellen Payne, Esquire.

Before POSCH, KEY, and MEGINLEY, *Appellate Military Judges.*

Judge MEGINLEY delivered the opinion of the court, in which Senior Judge POSCH and Judge KEY joined.

———————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

———————————

MEGINLEY, Judge:

A general court-martial composed of a military judge sitting alone convicted Appellant, in accordance with his pleas and a pretrial agreement (PTA), of one specification of failure to go to his assigned place of duty on divers occasions, in violation of Article 86, Uniform Code of Military Justice (UCMJ), 10

U.S.C. § 886; one specification of wrongful drug use, in violation of Article 112a, UCMJ, 10 U.S.C. § 912a; one specification of conduct unbecoming an officer and a gentleman, in violation of Article 133, UCMJ, 10 U.S.C. § 933; and one specification of breaking restriction to base on divers occasions, in violation of Article 134, UCMJ, 10 U.S.C. § 934.[1] The military judge sentenced Appellant to a dismissal, confinement for 136 days, and a reprimand. The military judge credited Appellant with 136 days against his sentence for time Appellant spent in pretrial confinement and restriction to base. The convening authority approved the sentence as adjudged.[2]

Appellant raises five assignments of error on appeal: (1) that his plea is improvident because there was a mutual misunderstanding regarding a material term of the PTA that resulted in Appellant not receiving the benefit of his bargain and that his plea was not knowing and voluntary; (2) that trial defense counsel were ineffective because they did not properly advise him about sex offender registration and failed to request confinement credit under Article 13, UCMJ, 10 U.S.C. § 813; (3) that Appellant's plea to conduct unbecoming an officer and a gentleman is improvident; (4) that testimony of Appellant's commander was improper aggravation evidence under Rule for Courts-Martial (R.C.M.) 1001; and (5) Appellant's counsel were ineffective because they failed to argue against a dismissal.[3]

Because we resolve issue (3) in Appellant's favor, we do not reach the remaining assignments of error and the issues personally raised by Appellant. Finding Appellant's plea to be improvident, we set aside the finding of guilty of Specification 2 of Charge IV and the sentence, and return the case to The Judge Advocate General for remand to the convening authority for further processing consistent with this opinion.

---

[1] References to the punitive articles of the Uniform Code of Military Justice (UCMJ) are to the *Manual for Courts-Martial, United States* (2016 ed.) (2016 *MCM*). Unless otherwise noted, all other references to the UCMJ, the Rules for Courts-Martial (R.C.M.), and the Military Rules of Evidence are to the *Manual for Courts-Martial, United States* (2019 ed.) (2019 *MCM*).

[2] Consistent with the terms of the 1 May 2019 PTA, the convening authority withdrew and dismissed without prejudice, upon the acceptance of Appellant's guilty plea, one charge with one specification of indecent exposure, in violation of Article 120c, UCMJ, 10 U.S.C. 920c; one specification of a violation of conduct unbecoming an officer; and an additional charge with one specification of conducting unbecoming an officer, in violation of Article 133, UCMJ, 10 U.S.C. § 933.

[3] Appellant personally asserts issues (4) and (5) pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).

## I. BACKGROUND

Appellant argues his plea to Specification 2 of Charge IV, conduct unbecoming, is improvident because his conduct did not amount to conduct unbecoming an officer and a gentleman. This specification charged Appellant with wrongfully touching AD:

> In that [Appellant], did, at or near Oklahoma City, Oklahoma, on or about 21 August 2018, wrongfully touch [AD's] buttocks and thighs and that under the circumstances, this behavior constituted conduct unbecoming an officer and gentleman.

On 21 August 2018, Appellant was at the apartment of his girlfriend, KH. KH and her best friend, AD, were going out together that evening. After AD arrived and met Appellant for the first time, according to Appellant, the three engaged in flirting. Appellant's perception was that the "atmosphere was sexually tense." After their discussion, KH and AD departed, while Appellant remained at the apartment and played video games. When KH and AD returned back to the apartment close to midnight, KH went to her bedroom and fell asleep.

However, Appellant and AD stayed awake, and for the next five hours or so, talked throughout the night. The conversation was, in part, of a sexual nature and both were drinking alcohol.[4] According to Appellant, he and AD discussed "things that [they had] done with other people," and their "sexual histories, and potential desires," but he denied any discussion of having sex with AD or having a threesome with AD and KH, nor was there any indication from AD that she wanted to engage in sex with Appellant or between Appellant and

---

[4] Appellant was charged with another specification of conduct unbecoming an officer and gentleman (Additional Charge and its Specification). In conducting the providence inquiry on this specification, which occurred before the specification at issue (Specification 2 of Charge IV), the military judge discussed the sexual nature of Appellant's conversation with AD. However, after conducting the providence inquiry on the Specification of the Additional Charge, but before the military judge accepted Appellant's plea to the charge, pursuant to new PTA discussions, Appellant withdrew his plea of guilty to the Additional Charge and its Specification and pleaded not guilty. This charge was withdrawn by the convening authority pursuant to the PTA. Nonetheless, the military judge advised trial defense counsel that he would not consider Appellant's responses to his questioning of the Additional Charge and its Specification, unless Appellant waived and allowed him to consider those responses related to Specification 2 of Charge IV (which offenses occurred during the same time period). Trial defense counsel waived any concerns to the military judge considering portions of the providence inquiry related to the conduct or interactions Appellant had with AD charged in the Additional Charge and its Specification, except for facts directly related to the actual specification.

KH. Other than having this sexual discussion, Appellant did not engage in any kind of romantic activity with AD.

During the providence inquiry, Appellant told the military judge that in the early morning hours of 22 August 2018, at around 0500, Appellant and AD discussed where they were going to sleep. AD suggested that Appellant sleep in the bedroom with KH and she would sleep on the couch. Appellant told AD that she should

> sleep in the bed because [KH] would be upset with [Appellant] if [Appellant let] her best friend sleep on the couch. [AD] agreed and went into [KH]'s bedroom. After approximately 5 minutes, [Appellant] got in the bed with [KH] and [AD], with [KH] lying in the middle. At this point, all three . . . were under the covers. [Appellant] reached over [KH]'s body, to try to wake up [AD].

Appellant then told the military judge,

> . . . I do not have a strong recollection of exactly where I touched [AD], but I reviewed the government's evidence including [AD's] statement to [Air Force Office of Special Investigations] and I have no reason to doubt that I touched her buttocks in addition to her thigh while trying to wake her up. While I was only trying to wake her up and I was not trying to touch her buttocks, the room was dark and I could not see exactly where my hand went or what I touched underneath the covers. [AD] did not respond so, I left the bed and slept on the couch. As an Air Force officer, I realized that my actions were reckless and uncalled for and that I should not have tried to wake her up in this manner. Taking all the circumstances into account, I believe that my behavior in this private capacity dishonored me personally and seriously compromised my standing as an officer. I had no legal justification or excuse for touching [AD] in this manner and I could've avoided doing so if I had wanted to. I apologize for my actions.

When asked if AD was awake when Appellant entered the bedroom, Appellant responded he did not know if she was awake or not. Moments later, the military judge asked Appellant about his touching of AD, stating, "And then you, I think you said you reached over your girlfriend. You didn't like graze her or anything, you purposely kind of [reached over] to get [AD's] attention?" Appellant responded, "Yes, sir." Appellant then admitted he touched AD's thigh and buttocks. Although Appellant acknowledged he intended to touch AD, and that he did not have consent to touch her, Appellant's intent "was to attempt to [ ] wake her up when I entered the bed, but [I] was reckless in reaching

underneath the covers without knowing where my hand was going." Appellant then told the military judge that he was confident he touched AD's thigh and buttocks.

The military judge further asked Appellant, "Is that why you believe your conduct was essentially conduct unbecoming?" Appellant responded, "Yes, sir. That is the case." The military judge then stopped and read Appellant the definition of mistake of fact as to consent, and then asked Appellant, whether he mistakenly believed AD was consenting to any of this conduct. Appellant responded, "[A]t the time I had no reason to believe that she wanted me to touch her." Appellant again reiterated that AD had no reaction to his touching of her, and once Appellant saw no reaction, he left the bed. The military judge asked Appellant if he would agree and admit that his actions with respect to AD were wrongful. Appellant said, "Yes sir. I would." Appellant then agreed, again, that his behavior constituted conduct unbecoming an officer and gentleman. The military judge asked Appellant, "Why is it again [conduct unbecoming]?" Appellant responded, "I never received any indication that she wanted me to touch her." The military judge concluded by asking Appellant if he believed and admitted that he wrongfully touched AD's buttocks and thighs, and that under the circumstances, his behavior constituted conduct unbecoming an officer and gentleman. Appellant stated, "Yes sir. I do."

While conducting Appellant's providence inquiry, the military judge read Appellant the definitions of assault consummated by a battery, and remarked that Appellant's touching of AD "sound[ed] like [he] may have committed an assault consummated by battery [offense]?"[5] Appellant responded, "Yes, sir." Nonetheless, the military judge raised three concerns, namely, that "without her consent language" was not included in the specification, whether the specification stated an offense, and whether trial defense counsel had an issue with notice or vagueness concerns with the specification. Trial defense counsel addressed these concerns, responding that "the defense believes it was under notice as [the specification] was charged under an Article 128 [UCMJ, 10 U.S.C. § 928,] theory as opposed to an Article 120[, UCMJ,] theory. Consent would be an affirmative defense and it would not be a requirement under the way it was drafted." The Government's position was that the charge was analogous to an Article 128, UCMJ, offense, and the military judge agreed, concluding that the maximum punishment included a dismissal and six months' confinement, which were the limits for the offense of assault consummated by a battery in

---

[5] The military judge also read the definition of bodily harm (stating, "Bodily harm means any physical injury or offensive touching of another person, however slight").

violation of Article 128, UCMJ.

Additionally, Appellant and the Government stipulated to the following facts:

> [Appellant] eventually entered the bedroom and laid down on the other side of [KH]. Soon after getting in the bed, the [Appellant] reached over [KH's] body and touched [AD's] buttocks and thigh while whispering [AD's] name to get her attention. [AD] did not respond to [Appellant], and he eventually stopped touching her, after which [AD] fell asleep. [AD] did not consent to this act, and she did not want [Appellant] to touch her buttocks and thighs, but did not express her feelings in any way during the encounter in the bed. [Appellant's] morally unfitting and unworthy actions dishonored or disgraced him personally and seriously detracted from his standing as a commissioned officer.

## II. DISCUSSION

### A. Law

#### 1. Providence of a Guilty Plea

"A military judge's decision to accept a guilty plea is reviewed for an abuse of discretion." *United States v. Eberle*, 44 M.J. 374, 375 (C.A.A.F. 1996).

> [T]he record . . . must reflect not only that the elements of each offense charged have been explained to the accused but also that the military trial judge . . . has questioned the accused about what he did or did not do, and what he intended (where this is pertinent), to make clear the basis for a determination by the military trial judge . . . whether the acts or the omissions of the accused constitute the offense or offenses to which he is pleading guilty.

*United States v. Care*, 40 C.M.R. 247, 253 (C.M.A. 1969) (citations omitted).

A military judge abuses this discretion when accepting a plea if he does not ensure the accused provides an adequate factual basis to support the plea during the providence inquiry. *Id*. This is an area for which the military judge is entitled to much deference. *United States v. Inabinette*, 66 M.J. 320, 322 (C.A.A.F. 2008).

At trial, the military judge must ensure the accused understands the facts that support his guilty plea, and the judge must be satisfied that the accused understands the law applicable to his acts and that he is actually guilty. *See United States v. Medina*, 66 M.J. 21, 26 (C.A.A.F. 2008) (citing

at 250–51); *United States v. Jordan*, 57 M.J. 236, 238 (C.A.A.F. 2002). "If the factual circumstances as revealed by the accused himself objectively support that plea," the factual predicate is sufficiently established. *United States v. Faircloth*, 45 M.J. 172, 174 (C.A.A.F. 1996) (quoting *United States v. Davenport*, 9 M.J. 364, 367 (C.M.A. 1980)). "In reviewing the providence of [the a]ppellant's guilty pleas, we consider his colloquy with the military judge, as well any inferences that may reasonably be drawn from it." *United States v. Carr*, 65 M.J. 39, 41 (C.A.A.F. 2007) (citing *United States v. Hardeman*, 59 M.J. 389, 391 (C.A.A.F. 2004)).

In determining the accuracy of a plea, the military judge shall not accept a plea of guilty without making such inquiry of the accused as shall satisfy the military judge that there is a factual basis for the plea. Rule for Courts-Martial 910(e). Further, a military judge is required to explain the elements of the offense. Then, "the accused must be convinced of, and able to describe all the facts necessary to establish guilt." R.C.M. 910(e), Discussion.

Article 45(a), UCMJ, 10 U.S.C. § 845(a), requires that a military judge set aside a guilty plea if an accused "sets up matter inconsistent with the plea, or if it appears that he has entered the plea of guilty improvidently or through lack of understanding of its meaning and effect . . . ." *See also United States v. Hines*, 73 M.J. 119, 124 (C.A.A.F. 2014) (stating that if an accused sets up matter inconsistent with the plea at any time during the proceeding, the military judge must either resolve the apparent inconsistency or reject the plea) (internal quotation marks and citation omitted).

When a defense is raised by the appellant's statements during a providence inquiry, the military judge should explain the elements of the defense to the appellant and resolve the issue, before accepting the guilty plea. R.C.M. 910(e), Discussion; *see also United States v. Lee,* 16 M.J. 278, 281 (C.M.A. 1983). If the accused subsequently does not negate the possible defense, or other evidence belies the negation of the defense, the military judge must withdraw the guilty plea, enter a plea of not guilty, and proceed to trial on the merits. *United States v. Jemmings,* 1 M.J. 414, 417–18 (C.M.A. 1976). The military justice system imposes even stricter standards on military judges with regards to guilty pleas than those imposed on federal civilian judges. *United States v. Perron*, 58 M.J. 78, 82 (C.A.A.F. 2003) (citing *United States v. Outhier*, 45 M.J. 326, 331 (C.A.A.F. 1996)). "Article 45(a)[, UCMJ,] requires that, in a guilty-plea case, inconsistencies and apparent defenses must be resolved by the military judge or the guilty pleas must be rejected." *Outhier*, 45 M.J. at 331.

An appellate court "will not overturn a military judge's acceptance of a guilty plea based on a mere possibility of a defense. The record must show a substantial basis in law and fact for rejecting the plea of guilty." *United States*

*v. Faircloth*, 45 M.J. 172, 174 (C.A.A.F. 1996) (quoting *United States v. Prater*, 32 M.J. 433, 436 (C.M.A. 1991)) (internal quotation marks omitted); *see also Hayes*, 70 M.J. at 458 (distinguishing a "possible defense" from the "mere possibility of a defense"). On appeal, a guilty plea should be overturned only if the record fails to objectively support the plea or there is "evidence in 'substantial conflict' with the pleas of guilty." *United States v. Higgins*, 40 M.J. 67, 68 (C.M.A. 1994) (citations omitted). In deciding whether a plea is rendered improvident by statements inconsistent with the plea, the sole question is whether the statement was inconsistent, not whether it was credible or plausible. *Lee*, 16 M.J. at 281.

### 2. Conduct Unbecoming an Officer

The offense of conduct unbecoming an officer includes actions which are "indicated by acts of dishonesty, unfair dealings, indecency, indecorum, lawlessness, injustice, or cruelty." *Manual for Courts-Martial, United States* (2016 ed.) (*MCM*), pt. IV, ¶ 59.c.(2). The conduct

> must offend so seriously against law, justice, morality or decorum as to expose to disgrace, socially or as a man, the offender, and at the same time must be of such a nature or committed under such circumstances as to bring dishonor or disrepute upon the military profession which he represents.
>
> . . . If the act, though ungentlemanlike, be of a trifling character, involving no material prejudice to individual rights, or offence against public morals or decorum, it will not in general properly be viewed as so affecting the reputation of the officer or the credit of the service as to be made the occasion of a prosecution under the Article.

*United States v. Brown*, 55 M.J. 375, 382 (C.A.A.F. 2001) (omission in original) (citing William Winthrop, Military Law and Precedents 711–12 (2d ed. 1920 reprint)). "The conduct must impugn the honor or integrity of the officer or subject him to social disgrace. Article 133[, UCMJ,] is reserved for serious delicts of officers and should not be demeaned by using it to charge minor derelictions." *United States v. Murchison*, No. ACM 32412, 1997 CCA LEXIS 442, at *5 (A.F. Ct. Crim. App. 20 Aug. 1997) (unpub op.) (citations omitted). "'Unbecoming' . . . is understood to mean not merely inappropriate or unsuitable, . . . but *morally* unbefitting and unworthy." *Id* at *5–6 (citations omitted); *see also United States v. Rogers*, 54 M.J. 244, 255–56 (C.A.A.F. 2000).

Conduct unbecoming an officer and gentleman under Article 133, UCMJ, is a general intent crime. "[G]eneral intent merely requires [t]he intent to perform [the actus reus] *even though the actor does not desire the consequences that result*. . . . [A] general intent mens rea would require only that Appellant

*intended* to commit the conduct alleged in each specification." *United States v. Voorhees*, 79 M.J. 5, 16 (C.A.A.F. 2019).

In order for the military judge to find Appellant guilty of conduct unbecoming an officer and gentleman under Article 133, UCMJ, the military judge must have found that (1) Appellant did a certain act and (2) under the circumstances, the act constituted conduct unbecoming an officer and gentleman. *See MCM*, pt. IV, ¶ 59.b**.** Conduct in violation of Article 133, UCMJ, is

> action or behavior in an official capacity which, in dishonoring or disgracing the person as an officer, seriously compromises the officer's character as a gentleman, or action or behavior in an unofficial or private capacity which, in dishonoring or disgracing the officer personally, seriously compromises the person's standing as an officer.

*MCM,* pt. IV ¶ 59.c.(2).

> An officer's conduct need not violate other provisions of the UCMJ or even be otherwise criminal to violate Article 133, UCMJ. The gravamen of the offense is that the officer's conduct disgraces him personally . . . . Clearly, then, the appropriate standard for assessing criminality under Article 133 is whether the conduct or act charged is dishonorable and compromising as hereinbefore spelled out—this notwithstanding whether or not the act otherwise amounts to a crime.

*United States v. Lofton*, 69 M.J. 386, 388–89 (C.A.A.F. 2011) (quoting *United States v. Schweitzer*, 68 M.J. 133, 137 (C.A.A.F. 2009)).

"The test for a violation of Article 133, UCMJ, is 'whether the conduct has fallen below the standards established for officers.'" *United States v. Diaz*, 69 M.J. 127, 136 (C.A.A.F. 2010) (*quoting United States v. Taylor*, 23 M.J. 314, 318 (C.M.A. 1987)). A determination if the conduct charged is unbecoming of an officer includes "taking all the circumstances into consideration." *MCM*, pt. IV, ¶ 59.c.(2). "Such circumstances incorporate the concept of honor." *Diaz*, 69 M.J. at 136. "[E]vidence of honorable motive may inform a factfinder's judgment as to whether conduct is unbecoming an officer." *Id*. The subjective motivation of an accused is relevant to a charge under Article 133, UCMJ. *Id*.

Before an officer can be convicted of an offense under Article 133, UCMJ, due process requires "'fair notice' that an act is forbidden and subject to criminal sanction." *United States v. Vaughan*, 58 M.J. 29, 31 (C.A.A.F. 2003) (citing *United States v. Bivins*, 49 M.J. 328, 330 (C.A.A.F. 1998)); *see United States v. Anderson*, 60 M.J. 548, 554 (A.F. Ct. Crim. App. 2004). The question is whether a "reasonable military officer would have no doubt that the activities charged

constituted conduct unbecoming an officer." *United States v. Frazier*, 34 M.J. 194, 198 (C.M.A. 1994) (footnote omitted) (citing *Parker v. Levy*, 417 U.S. 733, 757 (1974)). "Whenever the offense charged [under Article 133, UCMJ,] is the same as a specific offense set forth in this Manual, the elements of proof are the same as those set forth in the paragraph which treats the specific offense, with the additional requirement that the act or omission constitutes conduct unbecoming an officer and gentleman." *MCM,* pt. IV, ¶ 59.c.(2).

**B. Analysis**

Recognizing that a military judge is entitled to much deference when it comes to accepting guilty pleas, we find that the military judge abused his discretion in accepting Appellant's plea to Specification 2 of Charge IV, conduct unbecoming an officer and a gentleman, as there is not an adequate factual basis to support the plea.

As a threshold matter, we agree with the military judge's determination that Appellant's touching of AD "sounded" like an assault consummated by battery. With this in mind, "[w]henever the offense charged [under Article 133, UCMJ,] is the same as a specific offense set forth in this Manual, the elements of proof are the same as those set forth in the paragraph which treats the specific offense, with the additional requirement that the act or omission constitutes conduct unbecoming an officer and gentleman." *MCM*, pt. IV, ¶ 59.c.(2). In determining how to resolve this issue, we look at the reasoning of *United States v. Arthen*, 32 M.J. 541 (A.F.C.M.R. 1990). In *Arthen*, our court analyzed a conduct unbecoming allegation that appeared to be a fraternization charge. *Id*. at 544. We stated, "Our test will be: If it looks like fraternization and the parties treated it like fraternization, it is fraternization. What does the offense look like?" *Id*. at 545. In *Arthen*, the court opined that when the Government elects to charge what traditionally has constituted fraternization under Article 134 rather than under Article 133, they have gained an element rather than eliminating any. *Id*. at 544; *see also United States* v. *Parrillo*, 31 M.J. 886 (C.M.A. 1990); *United States v. Court*, 24 M.J. 11 (C.M.A. 1987). Therefore, in *Arthen*, the court concluded that the specification in question looked like fraternization. *Id*. at 545. Finding the reasoning of *Arthen* instructive, we conclude that the elements of proof are the same as those for the offense of assault consummated by a battery with the additional element that Appellant's behavior constitute conduct unbecoming an officer and gentleman under the circumstances.

The two elements of assault consummated by a battery are that (1) an accused did bodily harm to a certain person; and (2) that the bodily harm was

done with unlawful force or violence. *See MCM,* pt. IV, ¶ 54.b.(2).[6] According to the description of this offense in the *Manual*, "[i]f bodily harm is inflicted unintentionally and without culpable negligence, there is no battery. It is also not a battery to touch another to attract the other's *attention* or to prevent injury." *MCM*, pt. IV, ¶ 54.c.(2)(d) (emphasis added).

Even though this *de facto* defense is not among the defenses listed in R.C.M. 916, the military judge was required to inquire further why Appellant believed he was guilty under the circumstances. While Appellant stated AD did not consent to his touching, the questioning in the providence inquiry did not adequately address Appellant's contradictory statements that he was trying to wake AD up, or, that he wanted to get AD's attention, and the Government's own stipulation of fact agreeing with Appellant that he touched AD's buttocks and thigh to "get her attention." These statements set up a matter inconsistent with the plea.

More to the point, the military judge did not resolve legal justifications Appellant gave for the touching and why Appellant believed his conduct was reckless as opposed to simply negligent. Appellant stated his manner in waking up AD was "reckless . . . without knowing where [his] hand was going." Although the military judge discussed with Appellant the defense of mistake of fact as to consent, at no point was Appellant asked whether his specific touching of AD's buttocks and thigh was an accident, which was raised by Appellant's sworn statements.[7] However, the military judge did not squarely address the issue by advising the Appellant of the elements of the defense and then engaging in an appropriate colloquy with Appellant to resolve the issue. *See Jemmings,* 1 M.J. at 417–18.

Even if Appellant's plea had been provident with respect to the elements of the underlying assault consummated by a battery offense, we find the military judge abused his discretion in finding Appellant's plea satisfied the element that his conduct was unbecoming an officer and a gentleman under the circumstances. Although Appellant acknowledged that he met this element, stating

---

[6] "An 'assault' is an attempt or offer with unlawful force or violence to do bodily harm to another, whether or not the attempt or offer is consummated. It must be done without legal justification or excuse and without the lawful consent of the person affected. 'Bodily harm' means any offensive touching of another, however slight." *MCM,* pt. IV, ¶ 54.c.(1)(a). A "battery" is an assault in which in which the attempt or offer to do bodily harm is consummated by the infliction of that harm. *MCM*, pt. IV, ¶ 54.c.(2)(a).

[7] *See* R.C.M. 916(f), "*Accident.* A death, injury, or other event which occurs as the unintentional and unexpected result of doing a lawful act in a lawful manner is an accident and excusable." Appellant's statement that his conduct was "reckless" falls short of an intentional and expected result in that he repeatedly stated that he was only trying to wake up AD.

that he had dishonored himself and compromised his standing as an officer, other remarks were inconsistent with Appellant's legal conclusions. Taking Appellant's sworn statements at face value, this court is left with a record in which Appellant's purpose in touching AD was simply because he "was only trying to wake her up" and "was not trying to touch her buttocks." Without further explanation, an act done to get someone's attention is not obviously "wrongful," as discussed, much less so seriously offensive to law, justice, morality, or decorum, so as to disgrace an officer personally. In this instance, Appellant's plea fails to demonstrate why his behavior was "morally unfitting and unworthy." Appellant's stated intent in touching AD fails to amount to an unlawful touching under Article 128, UCMJ, and the plea fails to account for why Appellant's conduct violated Article 133, UCMJ, other than the fact that he was an officer.

A military judge must elicit facts from which the military judge can determine the factual basis for the plea and "mere conclusions of law recited by an accused are insufficient to provide a factual basis for a guilty plea." *Outhier*, 45 M.J. at 331. Because Appellant did not explain why he believed touching AD was offensive or wrongful under the circumstances we cannot simply accept Appellant's legal conclusions that his behavior was morally unfitting or compromised his standing as an officer so that he would get the benefit of his PTA with the convening authority. By Appellant essentially claiming that he was only seeking to get AD's attention to wake her up, although doing it "recklessly," and then simply agreeing to legal conclusions as to his guilt with a series of "Yes Sir's" in answering the military judge's questions, we are left with the inconsistencies of his plea, which the military judge was required to reconcile, and failed to do so.

### III. CONCLUSION

The finding of guilty of Specification 2 of Charge IV and the sentence are **SET ASIDE.** The case is returned to The Judge Advocate General for remand to the convening authority for further processing consistent with this opinion. A rehearing on the findings and sentence is authorized. Article 66(f), UCMJ, 10 U.S.C. § 866(f).

FOR THE COURT

CAROL K. JOYCE
Clerk of the Court